THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MARÍA GONZÁLEZ RIVERA and RAÚL OLMEDO GARCÍA, Defendants and Appellants.

No. CR-70-142.     Decided April 28, 1972.

*Rosa Nilda Ponce Cancel* for appellants. *Gilberto Gierbolini, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

María González Rivera and Raúl Olmedo were charged in an information with several violations of the Drug and Narcotics Act of Puerto Rico consisting of (1) possession and control of the narcotic drug known as heroin, (2) concealment and transportation of heroin, and (3) possession and control of the drug known as cocaine, whose wrappers or containers lacked the distinctive marks adopted by the Secretary of the Treasury as provided in § 37 of Act No. 48 of June 18, 1959.

The trial having been held by the court, after they lawfully waived their right to trial by jury, and on the basis only of the evidence for the prosecution since the defendants did not introduce evidence for the defense, both defendants were found guilty in each and every one of the counts charged against them.

Prior to the date set for the holding of the trial, the defendants had filed a motion to suppress evidence. It was agreed that that motion would be decided on the basis of the evidence introduced at the trial.

The admission of the evidence submitted by the prosecuting attorney was assigned as first error because the same was the result of an unlawful and unreasonable search.

The only evidence introduced at the trial demonstrated that in the afternoon of April 23, 1969, several special internal-revenue agents, among whom was agent José Miguel Díaz Alamo, were performing investigation work. Agent Díaz Alamo has been engaged for 22 years in the pursuit of illegal trafficking of drugs, most of that time in the Metropolitan Zone, first as an undercover agent and afterwards as an open agent. That afternoon they received a complaint handwritten by a person known to the agent Díaz Alamo and who had identified himself as Ward Deputy (*Comisario de*

*Barrio*) of the Sector known as Colectora, Coroza, Gandul and Trinchera. On five or six previous occasions the Deputy had given complaints to the agents, which were investigated by them with positive results. All these sectors have the reputation of being places where there is a daily traffic of drugs. In the said afternoon the agents went to Gaviota Street to investigate the Deputy's complaint and to try to locate the persons against whom said complaint was filed. Upon reaching Gaviota Street, the agents left the car and continued walking on foot. On entering one of the allies, they saw a group of persons, among whom were the defendants-appellants. Upon noticing the presence of the agents, the defendant Olmedo García passed to codefendant María González Rivera a small package wrapped up in pink colored paper and she put it in her bosom. Agent Díaz Alamo went up to María and seized the package that jutted out of her low neck. Upon examining the package the agent found a broken cigarette box and inside the box 21 decks and another small cigarette box containing 13 small lead paper envelopes that are used to package cocaine.[1] It was then that the agent arrested María and Olmedo. When the 13 decks were chemically analyzed all proved positive of cocaine.

■ A peace officer can make an arrest without the corresponding warrant, (a) when he has reasonable grounds to believe that the person about to be arrested has committed an offense in his presence, (b) when the person arrested has committed a felony although not in the officer's presence, and (c) when he has reasonable cause for believing that the person about to be arrested has committed a felony, regardless of whether or not the said offense was in fact committed. Rule 11 of the Rules of Criminal Procedure. In order to determine whether an officer had reasonable grounds to

---

[1] Agent Díaz Alamo testified that in seizing the package he did not know that it contained decks and that he was aware of it after opening same. (Tr. Ev. pp. 50 and 51.)

believe that the person about to be arrested has committed an offense in his presence, the conduct of the peace officer or agent is to be judged on the basis of the weight given by a reasonable and prudent person to the attendant circumstances. *Cepero Rivera* v. *Superior Court*, 93 P.R.R. 241 (1966). Reasonable grounds to believe that the person arrested has committed a felony, for which he is arrested, consist in possessing that information and knowledge which lead an ordinary and prudent person to believe that the person arrested has committed the offense. *People* v. *Cabrera Cepeda*, 92 P.R.R. 68 (1965). It is unnecessary to decide whether under the attendant circumstances in this case the agents had probable cause to lawfully arrest the defendants-appellants before the search since the latter preceded the arrest.

Perhaps the attendant circumstances in this case could justify the previous and immediate arrest of the appellants without a warrant.[2] Nevertheless, the agent proceeded to search one of the defendants, before putting her under arrest.

■ We have repeatedly held that a search without warrant is justifiable when it is incidental to a lawful arrest, *People* v. *Miranda*, 79 P.R.R. 125 (1956), but that an illegal search does not become valid because incriminating evidence is found on the person or in the place searched. *People* v. *Barrios*, 72 P.R.R. 163 (1951). See also, *Henry* v. *United States*, 361 U.S. 98, 4 L.Ed.2d 134.

■ Section 10 of Art. II of our Constitution provides that the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated and, likewise, that no warrant for arrest or search and seizure shall issue except by judicial authority and only upon probable cause supported by oath or

---

[2] See, *People* v. *Flores Valentín*, 88 P.R.R. 895 (1963) and *McCray* v. *Illinois*, 386 U.S. 300, 18 L.Ed.2d 327.

affirmation, and describing the place to be searched and the persons to be arrested or the things to be seized. The evidence obtained in violation of this section shall be inadmissible in the courts.

■ This provision is similar to that of the Fourth Amendment of the Constitution of the United States, whose application has been extended to the States through the Fourteenth Amendment, *Mapp* v. *Ohio,* 367 U.S. 643, 6 L.Ed.2d 1081. Although these constitutional provisions prohibit a search or seizure without a judicial order, our case law as well as that of the National Supreme Court has recognized some exceptions to the general principle. We have recognized the validity of a search when it is incidental to a lawful arrest. *People* v. *Miranda, supra.* On its part, the National Supreme Court, in *Katz* v. *United States,* 389 U.S. 347, 19 L.Ed.2d 576, expressed itself as follows:

"Searches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause,' *Agnello* v. *United States,* 269 U.S. 20, 33, for the Constitution requires 'that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police. . . .' *Wong Sun* v. *United States,* 371 U.S. 471, 481–482. 'Over and again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial processes,' *United States* v. *Jeffers,* 342 U.S. 48, 51, and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."

■ Among the few exceptions set forth by that high court, there are the following: the search incidental to a lawful arrest, *Agnello* v. *United States,* 269 U.S. 20, 70 L.Ed.2d 147; *Preston* v. *United States,* 376 U.S. 364, 11 L.Ed.2d 777; the search of a motor vehicle, ship or wagon when there exists probable cause to believe that contraband goods or

goods prohibited by law are being transported, *Carroll* v. *United States*, 69 L.Ed. 543; *Husty* v. *United States*, 75 L.Ed. 629; *Brinegar* v. *United States*, 93 L.Ed. 1879; when the vehicle has been confiscated and the subsequent search of the vehicle is related to the reason for which the occupant was arrested, *Cooper* v. *California*, 386 U.S. 58, 17 L.Ed.2d 730; when the property to be seized is in process of destruction or in imminent risk of being destroyed, *Johnson* v. *United States*, 92 L.Ed. 436;[3] *McDonald* v. *United States*, 93 L.Ed. 155; or when the exigencies of the circumstances make it imperative to proceed to a search prior to the arrest as when if the search is not performed the police officers' lives or the lives of others are gravely endangered, *Maryland Penitentiary* v. *Hayden*, 387 U.S. 294, 18 L.Ed.2d 782, and when consent is given for the search or the constitutional right against unreasonable searches and seizures is waived, *Zap* v. *United States*, 328 U.S. 624, 90 L.Ed. 1477.

■ The case at bar does not fall within any of the exceptions indicated. When the agent approached the defendant María González and seized the small package taking it out of her bosom, she did not try to escape or to destroy the evidence, nor offered resistance. Neither does the evidence show that the circumstances required for protection of lives, that the search be made before the arrest of the defendants-appellants. There is nothing in the evidence to indicate that the search was incidental to an arrest since the former preceded the latter. The agent, upon approaching appellant, did not tell her, for example, that she was detained or arrested, that she should not move, or to stop, nor any other expression showing that he was putting her under arrest. He did not detain her physically. The agent then did not take her into

---

[3] See also, *Abel* v. *United States*, 362 U.S. 217, 4 L.Ed.2d 668, where it is held that an administrative arrest (deportation), justifies a search as incidental to the same.

custody before searching her. See Rule 4 of the Rules of Criminal Procedure.

It arises from the evidence, on the contrary, that after agent Díaz Alamo opened the small package and found that it contained some decks, he decided to arrest and arrested the defendants-appellants.

We must conclude, therefore, that the search of the defendant María González, was unlawful and consequently that the evidence seized was inadmissible.

The first error having been committed, we need not consider the second, since the judgment appealed from should be reversed and the defendants-appellants acquitted.

Mr. Chief Justice Negrón Fernández took no part in this decision.