[No. F010259. Fifth Dist. Jan. 27, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
DONALD RAY NICHOLSON, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Cynthia G. Besemer, Deputy Attorneys General, for Plaintiff and Appellant.

LaForce & Dunn and Michael Dunn for Defendant and Respondent.

OPINION

**STONE (W. A.), J.**—We determine by this appeal that the exception to the search warrant requirement that arises when an officer has probable cause to search a vehicle for particular contraband (*United States* v. *Ross* (1982)

456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157]) does not terminate because a suspect's conduct prevents the officer from completing the search.

## STATEMENT OF THE CASE

Following a preliminary examination the Stanislaus County Municipal Court held respondent, Donald Ray Nicholson, to answer one count of possession of cocaine in violation of Health and Safety Code section 11350. Following arraignment in the superior court, respondent filed a motion to suppress evidence pursuant to Penal Code section 1538.5. Appellant, the People, initially advised the court they did not oppose the motion but later filed opposition. The parties stipulated the court could consider the testimony given at the preliminary hearing. The court granted the motion and dismissed the information pursuant to Penal Code section 1385. The People appeal from the judgment of dismissal.

## STATEMENT OF THE FACTS

The sole source of the facts is the preliminary hearing testimony of Modesto Police Officer Rudolph Skultety.

On September 4, 1987, Skultety was investigating an unrelated reckless driving complaint when he was stopped by Myrtle Nicholson, respondent's wife, who reported respondent was ramming her car with his car. The officer observed respondent seated in a blue Lincoln which was stopped behind Mrs. Nicholson's yellow Cadillac. Both respondent and Mrs. Nicholson advised Skultety the cars were registered in both of their names. Respondent told the officer his wife had property that belonged to him which he wanted. After obtaining identification from both parties, Officer Skultety turned away to finish his investigation of the unrelated reckless driving complaint. When he returned to respondent and Mrs. Nicholson, she stated she had no objection to the return of respondent's property.

The trunk of the yellow Cadillac was then opened, but Skultety could not remember who opened it. Skultety noticed a shotgun toward the back of the trunk at the same time respondent pointed it out. The officer removed the shotgun, opened the chamber, and unloaded the weapon. He advised respondent the shotgun was illegal. Respondent then told Skultety there was a handgun under the front seat. The officer found and unloaded this firearm as well, and learned from respondent there was no permit for the gun.

Upon further examination of the vehicle, Skultety found on the floor behind the driver's seat a briefcase, which Mrs. Nicholson stated belonged to her husband. On direct examination the officer testified that he then

asked respondent to open the combination-locked briefcase and respondent did so. On cross-examination, however, the officer indicated he did not recall asking respondent to open the briefcase: ". . . I think he just—I had it and he said he would open it. I don't recall asking him to open it."

When the briefcase was opened Skultety saw that it contained a black purse, and he attempted to check the purse for weapons. He could feel a solid object in the purse, but respondent prevented him from determining whether it was a weapon by placing his hands inside the briefcase over the purse. Skultety closed the briefcase. On direct examination the officer stated that he then put the briefcase back in the Cadillac. On cross-examination, however, he acknowledged his police report indicated that it was respondent who placed it back in the vehicle. At that point respondent was arrested and Mrs. Nicholson was detained for further investigation.

Sergeant Westley arrived a few minutes later and directed Skultety to "check him better." Skultety's testimony then became somewhat contradictory. On direct questioning, he stated he asked respondent to reopen the briefcase but respondent refused and said the briefcase belonged to his wife and the officer should ask her. Skultety did ask Mrs. Nicholson, but she did not know the combination. She then told the officer the purse contained "crank." However, on cross-examination Skultety stated his conversation with respondent's wife about the black purse occurred before respondent was asked to reopen the briefcase.

After respondent and his wife were transported to the police station, Mrs. Nicholson again gave Skultety permission to open the briefcase, which he did with the use of a screwdriver. Inside the black purse he found a white powdery substance, later identified as cocaine, as well as cut straws, a mirror, and a razor blade. Also in the purse, Skultety found business cards with respondent's name on them and a business card holder with the initials "DRN."

The trial court suppressed the seized evidence, ruling the search violated the Fourth Amendment to the United States Constitution.

DISCUSSION

*The Automobile Exception to the Search Warrant Requirement Does Not Terminate Because the Suspect Interferes With the Officer Conducting the Search*

In granting respondent's motion to suppress the cocaine seized from the black purse which was inside the briefcase, the trial court noted: "The

Court is granting the motion. The Court feels that the case is controlled by *People vs. Vasey* at 3—pardon me—834 F 2d 82 and that the search was not contemporaneous with the arrest but subsequent to the arrest, and the Court finds that the briefcase was in fact the Defendant's and it was not abandoned, and that Mrs. Nicholson did not, the Court feels the officer could not reasonably believe that Mrs. Nicholson had the right to authorize the search.

"No search warrant was obtained when it should have been obtained, so the motion to suppress is granted."

Appellant does not contest the trial court's conclusion that the search cannot be deemed permissible as incident to respondent's arrest. Nor does appellant argue on appeal the court erroneously held the search of the briefcase was not consented to by respondent. Rather, appellant asserts the vehicle exception to the Fourth Amendment renders the warrantless search proper and the trial court failed to address the vehicle exception issue. As the People expressed in their points and authorities before the superior court: "Even where not incident to an arrest, a car and its contents may be searched if there is probable cause to believe it contains contraband or evidence of a crime. [Citations.]"

The "automobile exception" is simply the United States Supreme Court's determination that police officers, acting with probable cause, may conduct a warrantless vehicle search for suspected contraband that is as thorough as that which a magistrate could authorize in a warrant. (*United States* v. *Ross, supra,* 456 U.S. at p. 823 [72 L.Ed.2d at p. 593].) Probable cause not only justifies a search of the entire vehicle, but also all of its contents, including containers found therein that might conceal the suspected contraband. (*Id.* at p. 825 [72 L.Ed.2d at p. 594].) In so holding, the Supreme Court commented: "A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." (*Id.* at pp. 821-822 [72 L.Ed.2d at p. 591], fn. omitted.)

"If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (456 U.S. at p. 825 [72 L.Ed.2d at p. 594].)

Turning to the facts before us, we conclude that once respondent opened the trunk of the Cadillac, Officer Skultety had trustworthy facts and cir-

cumstances within his personal knowledge which would cause a reasonably prudent man to believe the vehicle contained contraband. (*Husty* v. *United States* (1931) 282 U.S. 694, 700-701 [75 L.Ed. 629, 632, 51 S.Ct. 240, 74 A.L.R. 1407].) He observed an illegal shotgun in the trunk and learned from respondent there was an illegal handgun under the front seat. A warrant to search the vehicle and any containers found in it could properly have been issued to search for weapons. Thus, pursuant to *United States* v. *Ross, supra,* 456 U.S. at page 825 [72 L.Ed.2d at page 594], the officer acted properly in searching without a warrant not only the rest of the vehicle but also all of its contents, including containers "that may conceal the object of the search."

As we have previously noted, the ultimate search of the briefcase took place well after the vehicle was stopped and well after the officer learned it contained evidence of a crime. However, delay in the search beyond the original stop does not render the seizure constitutionally invalid. (*United States* v. *Johns* (1985) 469 U.S. 478, 483-488 [83 L.Ed.2d 890, 895-899, 105 S.Ct. 881].) In *Johns,* police seized two pickup trucks, took them to headquarters, unloaded packages found in them, and searched the packages three days later. The court, in upholding that search, rejected the notion "that searches of containers discovered in the course of a vehicle search are subject to temporal restrictions not applicable to the vehicle search itself." (*Id.* at p. 485 [83 L.Ed.2d at p. 897].) The search of the packages without a warrant three days after their seizure was permissible because a warrantless search of the vehicle was lawful at that time. The later search constitutes no greater intrusion upon possession or privacy than a search at the time of seizure, which clearly would have been permissible.

However, before Officer Skultety could complete his examination of respondent's briefcase and the purse, respondent interfered, causing him to terminate the search. Subsequent to respondent's interference, the officer's superior told him to check the locked briefcase again, which he could not do because only respondent knew the combination and respondent would not reopen it. The officer then learned from respondent's wife that the purse in the briefcase contained drugs.

■ The question on this appeal is whether the automobile exception to the search warrant requirement terminates when interference by a suspect prevents the original search from being completed and when later information confirms the presence of contraband in the vehicle or in a container within the vehicle. This particular question appears to be one of first impression.

Had respondent not interfered with Officer Skultety's first attempt to search for weapons, he would have discovered and seized the cocaine. The

seizure would have been permissible. To require suppression based upon the conduct of respondent during the search would allow him to profit from his interference with valid police action. We believe such a result is unwarranted. Inasmuch as the officer was entitled to search the briefcase thoroughly when it was first discovered, we can think of no privacy or possessory interest which would be furthered by holding that the right to search the briefcase pursuant to the automobile exception ended once the officer learned from respondent's wife that the briefcase contained drugs. Although information given by the wife provided the officer with an independent basis upon which to search, albeit with a warrant, we see no logical reason why the original justification for search without a warrant was interrupted.

Although, as respondent contends, where prior to a search officers have probable cause to believe a particular closed container and no other holds contraband, they must obtain a search warrant before opening it even though it is located in an automobile. (*United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]; *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586].) However, in those cases and others like them the police did not have probable cause to "search the vehicle or anything within it except the footlocker in the former case and the green suitcase in the latter." (*United States* v. *Ross, supra,* 456 U.S. at p. 814 [72 L.Ed.2d at p. 587].) By contrast, in *Ross* and in the case before us the probable cause went to the entire vehicle and any container within it in which a weapon might have been hidden. (*Id.* at p. 825 [72 L.Ed.2d at p. 594].)

The judgment of the trial court dismissing the information is reversed, and the trial court is directed to vacate its order granting respondent's Penal Code section 1538.5 motion to suppress evidence and to enter a new order denying said motion.

Franson, P. J., and Hamlin, J., concurred.